The STATE of Ohio, Appellee,

v.

SPENCER, Appellant.

[Cite as *State v. Spencer* (1998), 126 Ohio App.3d 335.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 72495.

Decided May 18, 1998.

*Stephanie Tubbs Jones,* Cuyahoga County Prosecuting Attorney, and *James A. Gutierrez,* Assistant Prosecuting Attorney, for appellee.

*Gold, Rotatori & Schwartz Co., L.P.A.,* and *Gerald S. Gold,* for appellant.

MICHAEL J. CORRIGAN, Judge.

Dr. Jeffrey C. Spencer, defendant-appellant, appeals the finding of contempt of court by the Cuyahoga County Court of Common Pleas for failure to produce medical records. Appellant assigns one error for review. This court, finding no error, affirms the decision of the trial court.

Appellant was served with a grand jury subpoena in October 1996, which sought the production of medical records for the time period from 1990–1996.

More specifically, the records concerned prescriptions issued by appellant to Jeffrey Liberman that may or may not have been for legitimate medical purposes. Appellant and Liberman objected to the release of these records by filing motions to quash the subpoena based upon the physician-patient privilege as set forth in R.C. 2317.02.

On February 12, 1997, the trial court held a hearing on the motions to quash the subpoena. Testimony was taken from Frank Bodi, who is a compliance agent for the Ohio Board of Pharmacy. Bodi testified that on August 12, 1996, a law enforcement coordinator for the State Medical Board presented to him several faxed prescriptions from appellant to Jeffrey Liberman for a large amount of anabolic steroids.[1]

Bodi conducted an investigation, which revealed approximately twenty to thirty similar prescriptions taken to three different pharmacies. Upon further inquiry, all the pharmacies informed Bodi that they thought the prescriptions were unusual and, for that reason, confirmed the prescriptions with appellant.

Bodi further testified that he talked with an expert in sports medicine and steroid use and was referred by him to Dr. Robert Dimeff regarding the investigation. Dimeff reviewed the prescriptions and believed that they were written for body building or enhancement and not for any other purpose. However, to verify his suspicions, Dimeff requested to see Liberman's medical records. Bodi testified that as of August 12, 1996, the targets of the investigation were both appellant and Liberman.

On April 17, 1997, the trial court overruled the motions to quash the grand jury subpoena. Because of his failure to provide the medical records in question, appellant was found to be in contempt of court and ordered to be held in custody until he produced the records. Custody was stayed pending this appeal.

Appellant states as his sole assignment of error:

"The trial court erred in denying the motion to quash the subpoena of Jeffrey Spencer M.D. because the medical records of Jeffrey Liberman are protected against disclosure by Ohio R.C. 2317.02, and case law does not support a court-created exception to the physician–patient privilege."

■ Initially, we note that a denial of a motion to quash a grand jury subpoena is not a final appealable order pursuant to R.C. 2505.02. *In re Grand Jury* (1996), 76 Ohio St.3d 236, 667 N.E.2d 363. However, in this case, after appellant refused to comply with the trial court's order to produce the medical records, he was found guilty of contempt and ordered to be held in custody by the

---

1. Bodi was both involved with and was aware of several investigations of Liberman, all regarding steroid use and/or distribution.

sheriff until compliance with the court's order. In such instances, the judgment of contempt is a final and appealable order that presents to this court for review the propriety of the interlocutory order which is the underlying basis for the contempt adjudication. See *Smith v. Chester Twp. Bd.* (1979), 60 Ohio St.2d 13, 14 O.O.3d 162, 396 N.E.2d 743; *McCarty v. Kimmel* (1989), 62 Ohio App.3d 775, 577 N.E.2d 665.

In this case, appellant argues that R.C. 2317.02 prohibits him from releasing the medical records of Liberman without his consent. Additionally, appellant argues that case law does not support a court-created exception to physician-patient confidentiality. For the following reasons, we find that the trial court properly denied appellant's motion to quash.

R.C 2317.02 reads in part:

"The following persons shall not testify in certain respects:

"\* \* \*

"(B)(1) A physician or a dentist, concerning a communication made to him by his patient in that relation or his advice to his patient, except as otherwise provided in this division, and division (B)(2) of this section, and except that, if the patient is deemed by section 2151.421 of the Revised Code to have waived any testimonial privilege under this division, the physician may be compelled to testify on the same subject."

R.C. 2317.02(B)(4) reads:

"As used in divisions (B)(1) to (3) of this section, 'communication' means acquiring, recording, or transmitting any information, in any manner, concerning any facts, opinions, or statements *necessary to enable* a *physician* or dentist to *diagnose, treat, prescribe,* or *act,* for a patient. A 'communication' may include, but is not limited to, any medical or dental record, chart, letter, memorandum, laboratory test and results, x-ray, photograph, financial statement, diagnosis, or prognosis." (Emphasis added.)

■ The intent of the privilege is to encourage a patient to be completely candid with his/her physician, thus enabling more complete treatment by the physician. See *Ohio State Med. Bd. v. Miller* (1989), 44 Ohio St.3d 136, 541 N.E.2d 602. Stated differently, "[t]he purpose of this privilege is to encourage patients to make a full disclosure of their symptoms and conditions to their physicians without fear that such matters will later become public." *State v. Antill* (1964), 176 Ohio St. 61, 64–65, 26 O.O.2d 366, 368, 197 N.E.2d 548, 551.

■ By its very terms, the physician-patient privilege attaches to *communications only made within the physician-patient relationship*—that is, communications made relating to the medical treatment of the patient. If the communica-

tion between the physician and patient purports a fraud and/or other criminal activity, the "relationship" is not established and the privilege does not attach. See *State v. Garrett* (1983), 8 Ohio App.3d 244, 8 OBR 318, 456 N.E.2d 1319; *State v. McGriff* (1996), 109 Ohio App.3d 668, 672 N.E.2d 1074. This is analogous to a situation where the attorney-client privilege cannot be asserted as a cover for wrongdoing. See *Lemley v. Kaiser* (1983), 6 Ohio St.3d 258, 6 OBR 324, 452 N.E.2d 1304.

■ In this case, the trial court heard the testimony of Frank Bodi, who stated not only that he was aware of Liberman's prior use of steroids, but also that each prescription to Liberman was for an unusually large amount. In fact, Bodi testified that due to the quantity of steroids in each prescription, several pharmacies refused to fill them.

Additionally, Bodi testified that he was referred to Dr. Robert Dimeff by an expert in sports medicine and steroid use. Dimeff reviewed the prescriptions and was of the opinion that they were written for body building or enhancement and not for any other purpose. Ohio Adm. Code 4731–11–05 strictly prohibits a physician from prescribing steroids for the purpose of enhancing athletic ability. Appellant did not offer any evidence that would establish that the prescriptions were issued for a legitimate medical purpose.

■ When the unrebutted evidence supports the contention that prescribed pharmaceuticals far exceed the dosage levels generally accepted in the medical community, that circumstance takes the claimed *"communication"* outside the realm of "privilege." Inordinate amounts of prescribed drugs immediately raise red flags and suggest activity not within the scope of *"privileged communication."* See *State v. Moss* (May 13, 1993), Cuyahoga App. Nos. 62318 through 62322, unreported, 1993 WL 158264; *State v. McCarthy* (Sept. 24, 1991), Montgomery App. No. 12123, unreported, 1991 WL 215641. To permit a claim of physician-patient privilege wherein there is reasonable articulable evidence supporting a suspicion of criminality would work a fraud upon the court. Such a claim cannot be embraced.

It is accepted that exceptions to privileged communications are primarily statutory. In the case before this court, there is unchallenged evidence supporting a finding of criminal conduct; therefore, public policy mandates that this circumstance vitiate the privilege. Accordingly, this court need not address the issue raised, to wit, statutory exception versus public policy. *State v. Smorgala* (1990), 50 Ohio St.3d 222, 553 N.E.2d 672. The court has the duty and responsibility to determine at the outset whether the party is in a position to raise "privilege" before having to address the availability of an exception. In this

case, the parties are not in a position to raise the shield afforded in ordinary physician-patient circumstances.

Accordingly, there is sufficient evidence in the record that demonstrates that appellant and Liberman were involved in illegal activity, *i.e.*, prescribing steroids for the purpose of enhancing athletic ability. Therefore, the physician-patient relationship for purposes of the privilege set forth in R.C. 2317.02 does not exist.

Having resolved the matter based upon the lack of privilege, this court need not consider several issues regarding the applicability of the physician-patient privilege: (1) a "public policy exception" that may or may not exist due to the apparent conflict between the physician-patient privilege under R.C. 2317.02 and a criminal grand jury proceeding pursuant to R.C. Chapter 2939, see *Smorgala, supra;* (2) whether it was the appellant physician, as opposed to the patient, who has invoked the privilege in an effort to shield himself from potential criminal liability when evidence of criminal activity exists, see *Hunter v. Hawkes Hosp. of Mt. Carmel* (1989), 62 Ohio App.3d 155, 574 N.E.2d 1147, and *Ohio St. Med. Bd. v. Miller* (1989), 44 Ohio St.3d 136, 541 N.E.2d 602; (3) the difference between the application of the physician-patient privilege in a civil or criminal matter; and/or (4) the distinction between discoverable material in a grand jury proceeding and admissible material in a trial setting. *In re Grand Jury Investigation of Brink* (1988), 42 Ohio Misc.2d 5, 536 N.E.2d 1202.

Therefore, while the trial court may or may not have been in error in denying the motion to quash based upon a "public policy" exception to the patient-physician privilege, we find that the trial court properly held that R.C. 2317.02 cannot be used as a shield in a criminal investigation when there exists sufficient credible evidence that the physician-patient relationship did not exist.

*Judgment affirmed.*

DYKE, P.J., concurs separately.

TIMOTHY E. McMONAGLE, J., dissents.

DYKE, Presiding Judge, concurring.

I write separately to outline the procedures which must be employed to overcome the claim of physician-patient privilege and to set forth my reasoning as to why the medical records which relate to the prescriptions for steroids and estrogen blockers must be turned over to the trial court. In so doing, I wish to emphasize that the decision reached this day is but one hurdle which the state must clear; the trial court must conduct an *in camera* inspection of the documents to determine whether there is the possibility that some of them may fall outside the scope of the exception to the privilege.

Although state law is not well developed as to the manner in which a privilege may be vitiated by fraud, federal law is instructive on this issue. By analogous federal law:

"A party wishing to invoke the crime-fraud exception must demonstrate that there is a factual basis for a showing of probable cause to believe that a fraud or crime has been committed and that the communications in question were in furtherance of the fraud or crime. This is a two-step process. First, the proposed factual basis must strike 'a prudent person' as constituting 'a reasonable basis to suspect the perpetration or attempted perpetration of a crime or fraud, and that the communications were in furtherance thereof.' *In re John Doe*, 13 F.3d [633] at 637 [(2nd Cir. 1994)] (quoting *In re Grand Jury*, 731 F.2d [1032] at 1039 [(2nd Cir. 1984)]). Once there is a showing of a factual basis, the decision whether to engage in an *in camera* review, the district court exercises its discretion again to determine whether the facts are such that the exception applies. These factual determinations are governed by the clearly erroneous standard." *United States v. Jacobs* (C.A.2, 1997), 117 F.3d 82, 87. See, also, *United States v. Zolin* (1989), 491 U.S. 554, 573, 109 S.Ct. 2619, 2631, 105 L.Ed.2d 469, 491 (before engaging in an *in camera* review to determine the applicability of the crime-fraud exception, the trial judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person that there has been a crime or fraud); cf. *United States v. Chen* (C.A.9, 1996), 99 F.3d 1495, 1503 ("The test for invoking the crime-fraud exception to the attorney-client privilege is whether there is 'reasonable cause to believe that the attorney's services were utilized in furtherance of the ongoing unlawful scheme' ").

In this matter, Frank Bodi, a compliance agent for the Ohio Board of Pharmacy, testified that during the course of a State Medical Board citation hearing against Dr. Spencer, he learned that Dr. Spencer had written several prescriptions for David Liberman for large amounts of anabolic steroids and estrogen blockers. The prescriptions were presented to several pharmacists who refused to fill them. Other pharmacists to whom the prescriptions were later presented questioned Dr. Spencer before filling them.

Bodi further testified that Dr. Dimeff of the Cleveland Clinic formed the impression[2] that the prescriptions were for body building or enhancement and not for any other purpose. Dr. Dimeff stated that he needed to review Liberman's medical records in order to verify these suspicions, however.

Bodi also outlined for the trial court that Liberman had been the subject of investigations related to the illegal use of steroids in 1988, 1991, and 1992.

---

2. We note that hearsay may be admitted in grand jury proceedings. Evid.R. 101(C); *State v. Brown* (1988), 38 Ohio St.3d 305, 308, 528 N.E.2d 523, 530–531.

Lieberman was convicted in federal court in connection with one of these investigations.

After the state finished, neither defendant nor Mr. Liberman presented evidence.

From the foregoing, there was a factual basis adequate to support a good faith belief by a reasonable person that the physician-patient privilege otherwise attending the prescriptions for steroids and estrogen blockers had been vitiated by fraud or crime. Therefore, these records should be turned over to the trial court for an *in camera* inspection.

With regard to our determination that the state's factual basis was unchallenged, the dissent raises the concern that in an effort to rebut the state's case and to preserve the privilege, the physician or patient will, paradoxically, be forced to reveal the privileged medical communications to the court, at this first step in the proceedings. The presentation of evidence by a party seeking to maintain the privilege need not derogate the privilege, however. On a rudimentary level, R.C. 2317.02 does not prevent the physician from testifying under oath that he was consulted in a professional capacity by a person on a certain date. See *Jenkins v. Metro. Life Ins. Co.* (1961), 171 Ohio St. 557, 15 O.O.2d 14, 173 N.E.2d 122, paragraph two of the syllabus. For substantive rebuttal, a physician may present expert testimony of a general nature which tends to show that the prescriptions, either singly or in tandem, could be used as viable treatment modality for any illness or condition. Alternatively, a physician whose prescriptions are under scrutiny may, without doing injury to the confidence which has been reposed, present expert testimony which categorizes all of the palliative effects of the drugs at issue. In any event, the *Zolin* court observed that if the matter proceeds to the second step of the inquiry, the *in camera* review, that "review does not destroy the privileged nature of the contested communications * * *." *United States v. Zolin, supra,* 491 U.S. at 569, 109 S.Ct. at 2629, 105 L.Ed.2d at 489.

Moreover, the *in camera* review of the records provides the added safeguard of allowing the trial court to determine "if there is a possibility that some of them may fall outside the scope of the exception to the privilege." *In re Grand Jury Proceedings (Vargas)* (C.A.10, 1983), 723 F.2d 1461, 1467. Additionally, the *in camera* review helps to ensure that the disclosure is narrowly tailored to the precise dimensions of the fraudulent communications.

TIMOTHY E. McMONAGLE, Judge, dissenting.

I respectfully dissent from the opinion of the majority, which finds that the communications between appellant Jeffrey Spencer, M.D. and Liberman were not made for a legitimate medical purpose and then concludes that the subpoenaed

medical records of Liberman are, therefore, not protected from production by appellant pursuant to the physician-patient privilege as set forth in R.C. 2317.02(B).

The majority finds today that sufficient evidence in the record demonstrates that appellant and Liberman were involved in illegal activity, *i.e.,* prescribing steroids for the purpose of enhancing athletic ability. Then, in reliance on *State v. Garrett, supra,* and *State v. McGriff, supra,* for the proposition that if the communication between the physician and patient purports a fraud and/or other criminal activity, the majority finds that a physician-patient "relationship" was not established between appellant and Liberman and, consequently, the statutory privilege did not attach.

The record simply does not support this conclusion. The record reveals that the prosecutor's office subpoenaed the medical records of appellant for his patient, David Liberman. Both physician/appellant and patient/Liberman filed motions to quash the subpoena with the court. In his motion, Liberman exercised his statutory right pursuant to R.C. 2317.02(B) to prevent the disclosure of his medical records, asserting that this exercise of his right to the privilege "was not an attempt to thwart a criminal prosecution" but was made to protect matters which are "very personal and confidential" to him.

A full hearing was held on the motions to quash the subpoena. On the record, the prosecutor stated to the court that the subpoena was issued in an attempt "to gather the medical records, to have a medical expert review them, and *find out if in fact these prescriptions were done in the legitimate course of professional practice.*" (Emphasis added.) Further, at the hearing, the prosecutor stated, "We are here to gain those records and *find out, if in fact that these drugs were given out for legitimate medical purposes.*" (Emphasis added.) Finally, the court, as a preliminary matter, indicated for the record that the authority pursuant to which the prosecutor issued the subpoena was to determine whether it was "appropriate or legal for the doctor to prescribe this quantity of drugs."

To me, the record clearly reflects that it was precisely because the state *did not know* whether the drugs were legally or illegally prescribed that the medical records were sought. At the hearing on the motion to quash the subpoena, Bodi testified that the medical expert, whom he consulted regarding the matter, indicated that it was his impression that the prescriptions were written for body building, but the expert needed the medical records "to verify his suspicions" that the prescriptions were written for body building *and not for any other purpose.* Further, Bodi's testimony indicated that all three pharmacists, prior to filling Liberman's prescriptions, communicated with Spencer to confirm the large amounts of steroids ordered and to determine the basis of Liberman's treatment. Apparently, two of the three pharmacists were sufficiently satisfied by Spencer's

explanation that they filled the prescriptions. Moreover, as a result of the information that Liberman was presently receiving prescriptions for steroids and because he had a previous drug-related conviction in federal court, a probation violation hearing was held on the matter in federal court. However, after a hearing in federal court, Liberman's federal probation was not revoked but was continued. Consequently, I do not see that the evidence in the record is sufficient to demonstrate conclusively that appellant and Liberman were involved in an illegal activity as the majority finds.

I find that the reasoning of the majority sets a dangerous precedent in order to circumvent an otherwise almost inviolate privilege. By circular reasoning, the majority finds that because the physician failed to offer evidence to establish the legitimate medical purpose for which the prescriptions at issue were written then there is "unchallenged" evidence supporting criminal conduct. The majority determined that public policy mandates that this circumstance vitiate the privilege. However, the evidence which the physician refused to offer to support the existence of a legitimate medical claim is exactly the privileged medical information which the physician is by statute required to protect. It flies in the face of reason that, in order to demonstrate the valid privilege of the communications and to rebut allegations that these communications are outside the statutory privilege provided by R.C. 2317.02(B), either the physician or the patient is required to reveal his or her privileged medical communications.

At best, I see the evidence and the reasoning of the majority approach something akin to a probable cause determination that illegal prescription drug activity *may* have taken place. However, the statute does not encompass or even consider "probable cause" as an exception to the physician-patient privilege which would allow disclosure of this patient's medical records.

Furthermore, the majority today equivocates as to whether the trial court may or may not have erred when it denied the motions to quash based upon a "public policy" exception to the statutory privilege as set forth in R.C. 2317.02. Our Supreme Court, in a unanimous decision, rejected such a judicial "public policy limitation" upon this statutorily created privilege. In *State v. Smorgala* (1990), 50 Ohio St.3d 222, 553 N.E.2d 672, the court announced that "[j]udicial policy preferences may not be used to override valid legislative enactments, for the General Assembly should be the final arbiter of public policy." The *Smorgala* court, in its analysis of the statutory physician-patient privilege, determined that "it is clear that the legislature has stated that the privilege is to be given effect absent specific statutory exceptions, none of which applies to this case," *id.* at 223, 553 N.E.2d at 674. The court went on to hold that "since the legislature has enacted a specific statutory provision in R.C. 2317.02(B) to establish and control

the physician-patient privilege, there is no vacuum within which we can proceed by common-law pronouncement." *Id.* at 225, 553 N.E.2d at 676.

Accordingly, I would find that the medical records sought to be disclosed by the state are within the protection of the statutory privilege of R.C. 2317.02(B), and absent a specific statutory exception, none of which applies to this case, I would find that the statutory privilege protects these medical records and they may not be disclosed by appellant. Therefore, I would find that the trial court's order of contempt against appellant for his failure to disclose medical records which are protected by statutory privilege is error, and I would reverse the decision of the trial court.