**The STATE of Ohio, Appellant,**

v.

**DESPER, Appellee.**

[Cite as *State v. Desper*, 151 Ohio App.3d 208, 2002-Ohio-7176.]

Court of Appeals of Ohio,
Seventh District, Jefferson County.

No. 02 JE 30.

Decided Dec. 20, 2002.

Bryan Felmet, Jefferson County Prosecuting Attorney, and Bradley Harp, Assistant Prosecuting Attorney, for appellant.

Francesca Carinci, for appellee.

David Gormley, State Solicitor, for amicus curiae.

Vukovich, Presiding Judge.

{¶ 1} Plaintiff-appellant state of Ohio appeals from the judgment of the Jefferson County Common Pleas Court that ordered the suppression of all evidence seized without a search warrant from defendant-appellee David Desper's pharmacies, and the suppression of all statements given by Desper's physicians without his consent. This appeal presents two issues for review. First, whether obtaining pharmaceutical records without a search warrant violates the Fourteenth Amendment of the Constitution. Second, whether the questionnaires given to Desper's physicians by an agent from the State Board of Pharmacy constituted a communication protected by the physician-patient privilege. For the reasons stated below, the judgment of the trial court is reversed, and this case is remanded.

## STATEMENT OF CASE AND FACTS

{¶ 2} In 2001, Agent George Pavlich of the Ohio State Board of Pharmacy was assigned to administratively inspect the prescription records of pharmacies in Jefferson County, Ohio. Pavlich found inconsistencies with regard to the prescriptions written for oxycodone-based pharmaceuticals. This led him to perform an

administrative investigation on prescriptions written for oxycodone[1] products in Jefferson County.

{¶ 3} In performing this administrative investigation, Pavlich obtained the pharmaceutical records of 1,000 to 1,500 citizens. He received these records by entering 20 of the 21 pharmacies in Jefferson County and asking for all prescriptions for oxycodone products. He inputted the records into a database to detect multiple and sometimes simultaneous drug activity by the same patients from different pharmacies and doctors. This profile narrowed the field to 50 patients. The number was then lowered to 10 by consulting a pharmacist on the State Board of Pharmacy. Pavlich then contacted the physicians who wrote the prescriptions to those patients. Questionnaires were submitted to the doctors to be filled out and returned to him.

{¶ 4} Interviews occurred with three of Desper's physicians, Dr. Kalla, Dr. Roig and Dr. Senchyshak. Doctors Kalla and Roig signed a statement (questionnaire) indicating that they were unaware that other prescriptions were being written for Desper for an oxycodone-based drug. Dr. Senchyshak stated that Desper was his patient and he wrote prescriptions for Desper in 2000. Later Dr. Parulkar was interviewed. She told Pavlich that she was unaware that Desper was obtaining oxycodone-based drug prescriptions from other doctors. Desper did not consent or authorize the release of any information from his doctors or pharmacies.

{¶ 5} The Jefferson County Grand Jury indicted Desper on eight counts of deception to obtain dangerous drugs (fourth-degree felonies) and eight counts of possession of drugs (third-degree felonies). Desper was arraigned and pled not guilty.

{¶ 6} Prior to trial, Desper filed a motion to suppress based on violations of R.C. 2317.02, physician-patient privilege. One month later, Desper filed a motion seeking an injunction in liminal relief and/or suppression. He also argued that he was the victim of a vindictive prosecution as contemplated by Crim.R. 29. A hearing, held on the motion to suppress, occurred on four different days. The state presented testimony from Dr. Roig, Timothy Benedict, the Assistant Executive Director of the Ohio State Board of Pharmacy, Specialist Robert Mandi with the Ohio State Board of Pharmacy, Agent George Pavlich of the Ohio State Board of Pharmacy, Dr. Parulkar, Dr. Senchyshak, and Dr. Kalla.

---

1. Oxycodone is an opium-based narcotic that is listed as a Schedule II drug. It is the active ingredient in Tylox, Percodan, Percocet, and Oxycontin. Oxycodone products are typically used to treat moderate to severe pain. <http://www.oxycodone-oxycotin.com>. However, oxycodone is highly addictive and is considered a devastating street drug. It is considered "poor man's heroin" or "hillbilly heroin." Deaths from oxycodone-based drugs are prevalent in the Appalachian region.

{¶ 7} The trial court suppressed all evidence. The state timely appeals from that decision.

## STANDARD OF REVIEW

{¶ 8} This court has previously concluded that our standard of review with respect to a motion to suppress is limited to determining whether the trial court's findings are supported by competent, credible evidence. *State v. Winand* (1996), 116 Ohio App.3d 286, 288, 688 N.E.2d 9, citing *Tallmadge v. McCoy* (1994), 96 Ohio App.3d 604, 608, 645 N.E.2d 802. Such a standard of review is appropriate because " '[i]n a hearing on a motion to suppress evidence, the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses.' " *State v. Hopfer* (1996), 112 Ohio App.3d 521, 548, 679 N.E.2d 321, quoting *State v. Venham* (1994), 96 Ohio App.3d 649, 653, 645 N.E.2d 831. However, once we have accepted those facts as true, we must independently determine as a matter of law whether the trial court met the applicable legal standard. *State v. Williams* (1993), 86 Ohio App.3d 37, 41, 619 N.E.2d 1141.

## ASSIGNMENTS OF ERROR NOS. ONE AND TWO

{¶ 9} The state raises four assignments of error. The first two are addressed together. They contend:

{¶ 10} "The trial court erred in determining that *Ferguson v. City of Charleston* (2001), 532 U.S. 67 [121 S.Ct. 1281, 149 L.Ed.2d 205], overrules *Stone v. Stow* (1992), 64 Ohio St.3d [156] 164 [593 N.E.2d 294], and its reliance on the administrative search exception."

{¶ 11} "The trial court erred in determining that Revised Code 3719.13, Revised Code 3719.27, and Ohio Administrative Code 4729-5-29 are unconstitutional to the extent they authorize the use of administrative search exceptions for law enforcement purposes."

{¶ 12} The state argues that the trial court erred in finding that *Ferguson* impliedly overrules *Stone*, thereby rendering R.C. 3719.13, R.C. 3719.27, and Ohio Adm.Code 4729-5-29 unconstitutional. We agree.

{¶ 13} R.C. 3719.13 and 3719.27 provide that records, prescriptions, and orders of controlled substances must be kept on file in the pharmacy. These statutes authorize federal, state, county, or municipal officers and employees of the State Board of Pharmacy to inspect these files at any reasonable time. R.C. 3719.13; R.C. 3719.27. However, the above personnel must be engaged in a specific investigation involving either a designated person or drug in order to obtain the information. Ohio Adm.Code 4729-5-29. Obtaining pharmaceutical

records without a specific investigation is a violation of R.C. 3719.99(E), a third-degree misdemeanor.

{¶ 14} The Ohio Supreme Court has upheld the constitutionality of R.C. 3719.13, R.C. 3719.27, and Ohio Adm.Code 4729-5-17 (currently Ohio Adm.Code 4729-5-29), stating that these statutes do not violate privacy rights found in the Fourteenth Amendment to the United States Constitution. *Stone v. Stow* (1992), 64 Ohio St.3d 156, 166, 593 N.E.2d 294 (establishing a program to detect when Schedule II and Schedule IV controlled substances were being diverted from legitimate channels to illicit channels). The court held that any privacy interest a patient possesses in his or her pharmaceutical records is limited to the right not to have the information disclosed to the general public. Id. However, patients have no reasonable expectation that their pharmaceutical records will not be disclosed to authorized law enforcement personnel pursuing a specific investigation. Id.; *State v. Russo* (2002), 259 Conn. 436, 467, 790 A.2d 1132.

{¶ 15} The *Stone* decision was based upon the United States Supreme Court's decision and reasoning in *Whalen v. Roe* (1977), 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64. *Whalen* was a consideration of whether a New York statute violated the right to privacy. The New York statute required that physicians identify patients receiving prescriptions for Schedule II drugs. The names and addresses of these patients were recorded in a centralized computer file maintained by the state health department. The *Whalen* court, after considering the relevant factors, determined that the challenged disclosure of prescription information did not invade "any right or liberty protected by the Fourteenth Amendment." Id.

{¶ 16} Applying the United States Supreme Court's holding, the Ohio Supreme Court observed:

{¶ 17} "This is not a situation in which the police officers are attempting to use warrantless administrative searches to uncover evidence of general criminality. See *State v. Akron Airport Post No. 8975* (1985), 19 Ohio St.3d 49, 19 OBR 42, 482 N.E.2d 606, syllabus; *State v. VFW Post 3562*, [ (1988),] 37 Ohio St.3d [310] at 315–316, 525 N.E.2d [773] at 778 (officers conducted liquor inspection warrantless 'administrative' searches to look for gambling devices). Rather in this situation, an administrative scheme set up to track particular often-abused Schedule II and IV drugs is also being used to detect the abuse of those drugs. No *general* criminality is at issue in this case." (Emphasis sic.) *Stone*, 64 Ohio St.3d at 165–166, 593 N.E.2d 294.

{¶ 18} Years after the *Stone* and *Whalen* holdings, the United States Supreme Court decided *Ferguson*. In that case, the court held that when the primary purpose of a warrantless "special needs" search is the discovery of violations of the criminal code, the search is no longer a "special needs" search and a search warrant is required. *Ferguson v. Charleston* (2001), 532 U.S. 67,

121 S.Ct. 1281, 149 L.Ed.2d 205 (defining "special needs" search as searches other than for the normal need for law enforcement). The United States Supreme Court reasoned that "[t]he reasonable expectation of privacy enjoyed by the typical patient undergoing diagnostic tests in a hospital is that the results of those tests will not be shared with nonmedical personnel without her consent." Id. at 78, 121 S.Ct. 1281, 149 L.Ed.2d 205.

{¶ 19} Desper contends that since an expectation of privacy applies to the results of medical tests/records, it likewise applies to pharmaceutical records. Therefore, according to Desper, R.C. 3719.13, R.C. 3719.27, and Ohio Adm.Code 4729-5-29, which authorize the seizure of pharmaceutical records in specific situations, are unconstitutional. We disagree. *Ferguson*'s applicability extends to factually similar cases and special needs cases, not purely to administrative searches. This is evidenced by footnote 21 in the *Ferguson* opinion. This footnote reads as follows:

{¶ 20} "Accordingly, this case differs from *New York v. Burger* [ (1987) ], 482 U.S. 691 [107 S.Ct. 2636, 96 L.Ed.2d 601], in which the Court upheld a scheme in which police officers were used to carry out administrative inspections of vehicle dismantling businesses. That case involved an industry in which the expectation of privacy in commercial premises was 'particularly attenuated' given the extent to which the industry in question was closely regulated. *Id.* at 700 [107 S.Ct. 2636, 96 L.Ed.2d 601]. More important for our purposes, the Court relied on the 'plain administrative purposes' of the scheme to reject the contention that the statute was in fact 'designed to gather evidence to enable convictions under the penal laws . . . .' *Id.* at 715 [, 107 S.Ct. 2636, 96 L.Ed.2d 601]. The discovery of evidence of other violations would have been merely incidental to the purposes of the administrative search. In contrast, in this case, the policy was specifically designed to gather evidence of violations of penal laws." (Ellipsis sic.) *Ferguson,* 532 U.S. at 83, 121 S.Ct. 1281, 149 L.Ed.2d 205, fn. 21.

{¶ 21} Furthermore, *Ferguson,* factually having nothing to do with pharmaceutical records, is not comparable to the court's previous decision in *Whalen* or the Ohio Supreme Court's decision in *Stone.* In *Ferguson,* a provider tested a pregnant patient's urine for drugs, specifically crack cocaine. If the test was positive, then the patient was referred to treatment. If the patient refused treatment or did not comply with the terms of treatment, the urinalysis results were given to the police. The patient never consented to the urine drug test. The United States Supreme Court specifically held that using the threat of criminal sanctions to deter pregnant women from using cocaine was not justification from a departure from the general rule that an official nonconsensual search is unconstitutional if not authorized by a valid warrant. Id. Thus, the primary purpose of the *Charleston* program was to use the threat of arrest and prosecu-

tion to force women into treatment. Id. at 86, 121 S.Ct. 1281, 149 L.Ed.2d 205. In both *Whalen* and *Stone,* the purpose of the administrative search was to monitor controlled substances, not primarily for law enforcement purposes. Therefore, *Ferguson* does not overrule *Stone.*

{¶ 22} Having found that *Ferguson* does not overrule *Stone,* we now turn our attention to whether the administrative search complied with R.C. 3719.13, R.C. 3719.27, and Ohio Adm.Code 4729-5-29. Specifically, we must decide whether discovery of the penal violations was incidental to, rather than the purpose of, the administrative search.

{¶ 23} In order for a search to fall within the ambit of a purely administrative search, four factors must be met. *Burger,* 482 U.S. 691, 107 S.Ct. 2636, 96 L.Ed.2d 601. First, the warrantless search must be made in a pervasively regulated business. Id. at 702, 107 S.Ct. 2636, 96 L.Ed.2d 601. As previously held by the United States and Ohio Supreme Courts, pharmacies are pervasively regulated businesses. *Whalen,* 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64; *Stone,* 64 Ohio St.3d 156, 593 N.E.2d 294; *Vermont v. Welch* (1992), 160 Vt. 70, 624 A.2d 1105, 1111; R.C. 3719.05; R.C. 3715.70.

{¶ 24} Second, there must be a " 'substantial' government interest that informs the regulatory scheme pursuant to which the inspection is made." *Burger,* 482 U.S. at 702, 107 S.Ct. 2636, 96 L.Ed.2d 601. The government does have a substantial government interest in regulating prescription drugs. *Stone,* 64 Ohio St.3d at 166, 593 N.E.2d 294. Prescription drugs have the possibility of becoming highly addictive street drugs. This is currently happening with Schedule II drugs, such as oxycontin.

{¶ 25} Next, the warrantless inspection must be necessary to further the regulatory scheme. *Burger,* 482 U.S. at 702–703, 107 S.Ct. 2636, 96 L.Ed.2d 601. In *Stone,* the Ohio Supreme Court held that the inspection furthered the regulatory scheme. 64 Ohio St.3d at 166, 593 N.E.2d 294. The administrative purpose of the statute is to monitor controlled substances. In the warrantless search at issue, the discovery of evidence of penal violations was incidental to the administrative search and not its objective, since the Ohio State Board of Pharmacy's purpose behind the search was to monitor the controlled substance oxycodone. Therefore, this element is met.

{¶ 26} Finally, the inspection scheme adequately substitutes for a warrant requirement because the provisions make clear to a commercial property owner that his property will be subject to periodic inspections for specific purposes. *Burger,* 482 U.S. at 703, 107 S.Ct. 2636, 96 L.Ed.2d 601. The *Stone* court stated that the time, place, and scope elements were sufficiently limited because inspections could occur only at reasonable hours and that access was

limited to officials engaged in a specific investigation of either a designated person or drug. *Stone,* 64 Ohio St.3d at 166, 593 N.E.2d 294. Officer Pavlich was investigating the use of oxycodone-based pharmaceuticals in Jefferson County. Thus, it was a specific investigation. Moreover, it is not constitutionally significant that the commercial property owner knew that he or she might be subject to periodic inspection but that the patient could be totally unaware of this possibility. All that is required is that the administrative search be pursuant to an investigation of a designated person or drug. In other words, the court in *Stone* understood that the patient might be unaware of the inspection, but held that the societal interest in regulating pharmacies and controlled substances outweighed that consideration. Therefore, the warrantless search at issue here met all of the requirements set forth in *Burger*, and the seizure of the pharmaceutical records did not violate Desper's rights.

{¶ 27} At the point that the State Board of Pharmacy narrowed the search to ten patients, the discovery of criminal violations was no longer incidental to the administrative search but rather was the objective. Therefore, at that point the search stopped being an administrative search and a criminal investigation commenced. Any evidence sought after that point would require a search warrant. However, a search warrant is not required for statements given by potential witnesses. Therefore, a search warrant was not required to obtain statements given by Desper's physicians to the State Board of Pharmacy.

{¶ 28} While this court disagrees with the trial court's conclusion regarding the pharmaceutical records, the trial court's journal entry was extremely well written and brought to light many of the points that are also troubling for this court, i.e., the possible misuse of power by a police officer to obtain records because they do not need to provide documentation or authorization. The trial court also indicated that a centralized prescription record-keeping system could easily be devised. However, a citizen's constitutional right to privacy is not violated by acting under the administrative search statutes as they are written now. While the trial court's concerns may be well placed, neither it nor this court has the authority to write a better version of the law. The fact that this court may agree with the trial court that the statutes and Administrative Code could provide better protection for the individual citizen without disruption of the process and the objectives of the administrative search is inconsequential. We must defer our concerns to the legislature to remedy. It is the distinct function of the legislature to make laws and formulate public policy, and the function of the judiciary to interpret those laws.

{¶ 29} Since the pharmaceutical records were obtained pursuant to an administrative search where potential criminality was incidental to the search, R.C. 3719.13 and 3719.27 and Ohio Adm.Code 4729-5-29 are constitutional. Accord-

ingly, the motion to suppress was improperly granted and should have been denied. These assignments of error are with merit.

## ASSIGNMENT OF ERROR NO. THREE

{¶ 30} "The trial court erred in determining that information obtained from the defendant-appellee's treating physicians without a search warrant or patient waiver appear to have been obtained illegally in violation of R.C. 2317.02(D)(1) and the patient's constitutional right to privacy as set forth in *Mann v. University of Cincinnati* ( [S.D.Ohio] 1993), 825 [sic, 824] F.Supp. 1190, and *Ferguson v. City of Charleston* (2001), 532 U.S. 67 [121 S.Ct. 1281, 149 L.Ed.2d 205]."

{¶ 31} The state argues that the physician-patient privilege does not rise to the level of a constitutional privacy right. Furthermore, the state contends that the statutory right to privilege does not attach when a patient is dishonest with his or her physician.

{¶ 32} The physician-patient privilege was created by the General Assembly to protect from public disclosure communications between physicians and patients in the treatment of patients. *State v. Garrett* (1983), 8 Ohio App.3d 244, 245, 8 OBR 318, 456 N.E.2d 1319. No physician-patient privilege existed under Ohio common law prior to the adoption of R.C. 2317.03. *Ohio State Med. Bd. v. Miller* (1989), 44 Ohio St.3d 136, 541 N.E.2d 602. Since R.C. 2317.02 provides that communications between physician and patient are confidential, it is in derogation of the common law and its protections must be strictly construed. *In re Miller* (1992), 63 Ohio St.3d 99, 109, 585 N.E.2d 396. However, the privilege is not absolute. *State v. Antill* (1964), 176 Ohio St. 61, 26 O.O.2d 366, 197 N.E.2d 548. Moreover, the physician-patient privilege is a statutory privilege. It could not be a constitutional right unless it is recognized under the umbrella of the privacy rights.

{¶ 33} The trial court held that *Ferguson* recognized the physician-patient privilege as a constitutional privacy right. We disagree. *Ferguson* was discussed at length under the first two assignments of error. Nowhere in the majority opinion is it implied or explicitly stated that the physician-patient privilege is a constitutional privacy right. Thus, the physician-patient privilege is merely a creature of statute. *State v. Webb* (1994), 70 Ohio St.3d 325, 334, 638 N.E.2d 1023.

{¶ 34} Furthermore, the Sixth Circuit Court of Appeals has specifically rejected the proposition that medical records, which fall within the physician-patient privilege, have a constitutional privacy right. *Mann v. Univ. of Cincinnati* (May 27, 1997), C.A.6 Nos. 95–3195 and 95–3292, 114 F.3d 1188, unpublished opinion. In *Mann,* the court stated:

{¶ 35} "The lower courts held that the medical records at issue were of such a private and personal nature that plaintiff enjoyed constitutional protection. This court has consistently rejected such constitutional claims." *Mann,* C.A.6 Nos. 95–3195 and 95–3292, 1997 WL 280188, *3.

{¶ 36} The physician-patient privilege is not a constitutional privacy right. The trial court incorrectly suppressed the evidence based upon that reason. Suppression is not the appropriate remedy for a nonconstitutional violation; rather, the appropriate remedy is the grant of a motion in limine. *State v. Jones* (2000), 88 Ohio St.3d 430, 727 N.E.2d 886. Desper labeled his motion to suppress also as a motion in limine; therefore, it can be construed as both. *State v. Davidson* (1985), 17 Ohio St.3d 132, 135, 17 OBR 277, 477 N.E.2d 1141. Since the trial court's order regarding this evidence renders the state's proof with respect to the pending charge so weak in its entirely that it destroyed any reasonable possibility of effective prosecution, it is appealable by the state despite the trial court's error in granting the motion to suppress rather than the motion in limine. Id.

{¶ 37} Since the information obtained from the physicians was not excludable under the constitutional privacy rights, we must now determine whether it was excludable under the statutory privilege enumerated in R.C. 2317.02. R.C. 2317.02(B)(1) protects communications made to a physician by a patient "in that relation." The physician-patient privilege belongs to the patient, not to the physician. In order for any privileged communication to be disclosed to anyone, the patient must either consent to the release of the information or disclose that information himself. Therefore, since Desper did not sign a waiver of the privilege, if the questionnaire contained "communications" between the physician and Desper it may be excludable under the privilege. The statute defines communication as "acquiring, recording or transmitting any information, in any manner, concerning any facts, opinions, or statements necessary to enable a physician or dentist to diagnose, treat, prescribe, or act for a patient." R.C. 2317.02(B)(5)(a).

{¶ 38} The questionnaire submitted to the physician asked the following six questions.

{¶ 39} "1. Do you know the patient in question as previously named in this statement and indicated in the following profile? If so, please indicate by briefly noting the association you have with this patient.

{¶ 40} "2. If you are the physician of this patient, please note how long you have been the physician of record for this patient and are you currently the patient's physician?

{¶ 41} "3. Did the previously named patient advise you, that he/she was obtaining controlled drug medications as indicated in his profile, while you were also their prescriber for similar medications? Were you aware of these multiple medications? Please review your patient records and the provided profile prior to providing this answer.

{¶ 42} "4. After your review and noting the prescribing of similar pain medications by another prescriber, would you have prescribed/written the amplified prescription if you were aware that the other medications were also prescribed?

{¶ 43} "5. Have you had any previous problems with this patient regarding prescribed medications?

{¶ 44} "6. Do you have any additional information regarding this incident that would be relevant to this investigation?"

{¶ 45} Questions 1 and 2 are not protected by the physician-patient privilege. The physician-patient privilege does not prevent the physician from testifying under oath that a person consulted him in a professional capacity on a certain date. *State v. Spencer* (1998), 126 Ohio App.3d 335, 342, 710 N.E.2d 352, citing *Jenkins v. Metro. Life Ins. Co.* (1961), 171 Ohio St. 557, 15 O.O.2d 14, 173 N.E.2d 122. Therefore, the answers to these questions did not violate the physician-patient privilege. Question 4 asks a general question about the physician's policy. It reveals no communication between the patient and the physician. As such, it is not a violation.

{¶ 46} However, Question 3 asks the physician to disclose a communication. Question 3 asks the physician to look at the profile filled out by the patient and to disclose the answer given by the patient to the question of whether another physician was prescribing controlled drug medications. This could be a communication between the physician and the patient. A patient's answers to questions in their profile are generally privileged.

{¶ 47} However, if Desper lied to the physician about whether another physician was prescribing him controlled drug medications, that statement would not be considered a communication under the statute. The definition of communication states that communications that are *necessary* to enable a physician to diagnose, treat, prescribe, or act are protected. R.C. 2317.02. A lie is not necessary to enable a physician to diagnose, treat, prescribe, or act for the patient. In fact, a lie might actually hinder the physician's ability to treat the patient. Therefore, untruthful communications are not protected under the privilege. The situation is analogous to the attorney-client privilege and the crime-fraud exception. In the attorney-client privilege communications in the furtherance of a crime or fraud do not further the goals of the attorney-client

privilege and are therefore undeserving of protections. *Boone v. Vanliner Ins. Co.* (2001), 91 Ohio St.3d 209, 216, 744 N.E.2d 154. The object of R.C. 2317.02 is to encourage patients to be forthcoming and candid in their statements to physicians by whom they are being treated. *Garrett*, 8 Ohio App.3d at 245, 8 OBR 318, 456 N.E.2d 1319. A lie to a physician regarding information used in treating the patient is not furthering the objective of the statute. The very terms of the privilege indicate that it attaches only to communications made within the physician-patient relationship. *Spencer*, 126 Ohio App.3d at 338–339, 710 N.E.2d 352. A lie is not made within the physician-patient relationship and, therefore, is undeserving of protections offered by the physician-patient privilege. Id.; *State ex rel. Buchman v. Stokes* (1987), 36 Ohio App.3d 109, 521 N.E.2d 515; *Garrett*, 8 Ohio App.3d 244, 8 OBR 318, 456 N.E.2d 1319; *State v. Jackson*, 8th Dist. No. 80051, 2002-Ohio-2746, 2002 WL 1265584.

{¶ 48} The prescription records and the answers to these questionnaires indicate that Desper lied to his physicians regarding similar prescriptions for controlled substances from other physicians. When a patient is visiting multiple physicians in order to obtain multiple prescriptions for the identical controlled drug and securing those drugs from multiple pharmacies, the patient's purpose in visiting the doctors is not for treatment, but rather is to deceptively secure a controlled substance. *Jackson*, 2002-Ohio-2746, 2002 WL 1265584, at ¶ 31. "Inordinate amounts of prescribed drugs immediately raise red flags and suggest activity not within the scope of privileged communication." *Spencer*, 126 Ohio App.3d at 339, 710 N.E.2d 352. A claim of physician-patient privilege should not be permitted where there is reasonable articulable evidence supporting a suspicion of criminality. Id.

{¶ 49} Accordingly, we agree with our sister districts' holdings that R.C. 2317.02(B) does not make inadmissible the testimony of a physician regarding false statements made to the physician by a person seeking a prescription for an illegal drug. Id.; *Buchman*, 36 Ohio App.3d 109, 521 N.E.2d 515; *Garrett*, 8 Ohio App.3d 244, 8 OBR 318, 456 N.E.2d 1319; *Jackson*, 2002-Ohio-2746, 2002 WL 1265584. Therefore, the questionnaires did not violate Desper's physician-patient privilege because lies are not communications as defined by the statute. The trial court incorrectly excluded this evidence. This assignment of error has merit.

### ASSIGNMENT OF ERROR NO. FOUR

{¶ 50} "The trial court erred in suppressing the defendant-appellee's pharmacy records and the statements of the defendant-appellee's physicians based on the exclusionary rule."

{¶ 51} Our disposition of the first three assignments of error renders this assignment of error moot.

{¶ 52} For the foregoing reasons, the judgment of the trial court is hereby reversed and this case is remanded for further proceedings according to law and consistent with this court's opinion.

Judgment reversed
and cause remanded.

GENE DONOFRIO and WAITE, JJ., concur.