DECISION AND JUDGMENT ENTRY
{¶ 1} Doctor Brenda Banks appeals the judgment of the Scioto County Common Pleas Court, overruling her motion to quash a grand jury subpoena and ordering her to produce patient records. On appeal, Banks contends that the trial court erred by ordering her to produce the patient records because to do so would violate the physician-patient privilege. Because the physician-patient privilege protects the medical records and none of the statutory exceptions apply, we agree. Accordingly, we reverse the judgment of the trial court.
 I. {¶ 2} The facts and trial court record are sparse. The Scioto County Grand Jury issued a subpoena to Banks ordering her to produce the medical records of over *Page 2 
fifty patients. Banks filed a motion to quash the subpoena. However, this motion is not part of the record on appeal. The trial court held a hearing on her motion and overruled it.
 {¶ 3} Banks appeals the trial court's decision and asserts the following assignment of error: "The trial court erred when it refused to quash the subpoena of appellees since the subpoena sought statutorily privileged documents."
 II. {¶ 4} In her sole assignment of error, Banks contends that the trial court abused its discretion by denying her motion to quash the subpoena and ordering her to produce patient records. She claims that producing the records would violate the physician-patient privilege contained in R.C. 2317.02(B).
 {¶ 5} The state asserts that Banks lacks standing to assert the privilege and that she waived the statutory privilege by failing to specifically reference it in her motion to quash or to specifically argue its applicability at the hearing. The state further maintains that even if she did not waive the argument, the privilege does not apply in the instant case. The state insists that a physician may not assert the privilege to shield the physician from criminal prosecution. However, nowhere does the state argue that Banks is invoking the privilege to shield herself from criminal liability. The state additionally argues that the privilege should not apply in grand jury proceedings.
 A. *Page 3 {¶ 6} Before addressing the merits of Banks' appeal, we first must address the state's two procedural arguments: (1) that Banks lacks standing to raise the physician-patient privilege; and (2) that Banks waived the argument regarding the physician-patient privilege. We undertake a de novo review to answer these legal questions. See, e.g.,Yazdani-Isfehani v. Yazdani-Isfehani, 170 Ohio App.3d 1, 2006-Ohio-7105, ¶ 20.
 1. {¶ 7} The state did not argue during the trial court proceeding that Banks lacks standing to raise the physician-patient privilege and may not raise it for the first time on appeal. Therefore, because the state failed to raise this issue in the trial court, it has waived this argument for appeal purposes. See, e.g., Stores Realty Co. v.Cleveland (1975), 41 Ohio St.2d 41, 43; Mark v. Mellott Mfg. Co.,Inc. (1995), 106 Ohio App.3d 571, 589.
 {¶ 8} Even had the state properly raised this argument, we note that courts generally allow physicians to raise the privilege when the patients are unaware that the records are being sought, which is apparently the case here. See Whitt v. ERB Lumber, 156 Ohio App.3d 518,2004-Ohio-1302, ¶ 26, citing Pollitt v. Mobay Chem. Corp. (S.D.Ohio 1982), 95 F.R.D. 101. See, generally, Grove v. Northeast Ohio NephrologyAssoc, Inc., 164 Ohio App.3d 829, 2005-Ohio-6914, ¶ 12 (holding that medical professionals had standing to challenge an order to produce medical records). Consequently, we reject the state's standing argument.
 2. *Page 4 {¶ 9} The state next asserts that during the trial court proceeding, Banks failed to argue that compliance with the grand jury subpoena would violate the statutory physician-patient privilege, and as such, she waived the argument.
 {¶ 10} It is a cardinal rule of appellate procedure that a party cannot assert new legal theories for the first time on appeal. SeeStores Realty Co., supra; Mellott Mfg. Co., supra. "Litigants must not be permitted to hold their arguments in reserve for appeal, thus evading the trial court process." Mellott Mfg. Co. at 589. As such, a reviewing court will not consider any issue a party failed to raise in the trial court, but instead, will consider the issue waived. See Lippy v. SocietyNatl. Bank (1993), 88 Ohio App.3d 33, 40.
 {¶ 11} Here, Banks' primary argument at the hearing was that complying with the grand jury subpoena would violate the federal Health Insurance Portability and Accountability Act (HIPAA).[1] Although the state asserts that her written memorandum referenced HIPAA only and not the statutory privilege, we are unable to ascertain the accuracy of this statement because none of the trial court filings, except the transcript of the hearing, were transmitted to this court on appeal. Thus, we can only verify whether Banks properly raised the issue by referencing the transcript.
 {¶ 12} The transcript shows that Banks sufficiently raised the physician-patient privilege to preserve it for appeal. At the hearing, Banks asserted that she would be violating HIPAA if she were to release the records. She also asserted that the *Page 5 
state attempted to circumvent the physician-patient privilege. Her counsel stated: "How can they, you know, you've got people on here that have a right to the — when they deal with their doctor, they have a right of [physician]/patient privilege. And by getting their records without their authority, you're circumventing that." In another instance, Banks' counsel distinguished a federal case that the state relied upon by noting that it refused to recognize the physician-patient privilege in the federal context. Although inartfully presented, we believe that Banks sufficiently raised the physician-patient privilege to avoid a waiver of the issue on appeal. Thus, we reject the state's waiver argument.
 B. {¶ 13} Having resolved the procedural issues, we turn now to Banks' argument that the trial court erred by overruling her motion to quash the subpoena and ordering her to produce the patient records.
 1. {¶ 14} Under Crim.R. 17(C), a subpoena may be used to command a person to produce (in court) books, papers, documents and other objects. However, upon motion of a party, the court may quash or modify the subpoena, if compliance would be unreasonable or oppressive. Crim.R. 17(C). Generally, an appellate court applies an abuse of discretion standard when reviewing a trial court's decision to quash a subpoena. See In re Grand Jury Subpoena Duces Tecum Directed to Keeper of Recordsof My Sister's Place, Athens App. No. 01CA55, 2002-Ohio-5600, ¶ 17;State v. Wasmus (Apr. 27, 1995), Franklin App. Nos. 94APA07-1013, 94APA07-1014. "The term `abuse of discretion' connotes more *Page 6 
than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. However, if the trial court's decision involves a specific construction of law, we review the decision de novo. See In re My Sister's Place at ¶ 17.
 {¶ 15} Here, the propriety of the trial court's decision regarding Banks' motion to quash turns upon the interpretation of the statutory physician-patient privilege. Thus, we apply a de novo standard of review.
 2. {¶ 16} R.C. 2317.02(B)(1) contains the physician-patient privilege and prohibits a physician from testifying "concerning a communication made to the physician * * * by a patient in that relation or the physician's * * * advice to a patient, except as otherwise provided in this division, division (B)(2), and division (B)(3) of this section, and except that, if the patient is deemed by section 2151.421 of the Revised Code to have waived any testimonial privilege under this division, the physician may be compelled to testify on the same subject."
 {¶ 17} Under R.C. 2317.02(B), the physician may be required to testify: "(1) in any civil action where the patient or guardian gives express consent, or if the patient is deceased, where the spouse or executor gives express consent, (2) if a claim is filed by the patient, (3) in any civil action concerning court-ordered treatment or services, (4) in any criminal action concerning tests or results of tests that determine the presence of alcohol or drugs in the patient's blood, (5) in *Page 7 
any criminal action against the physician, (6) in a will contest. R.C.2317.02(B)(1)(a) through (e)." Grove, supra, at ¶ 15.
 {¶ 18} The intent of the privilege is to encourage a patient to be completely candid with the physician, thus enabling more complete treatment by the physician. See Ohio State Med. Bd. v. Miller (1989), 44 Ohio St.3d 136, 139-140. Stated differently, "[t]he purpose of this privilege is to encourage patients to make a full disclosure of their symptoms and conditions to their physicians without fear that such matters will later become public." State v. Antill (1964), 176 Ohio St. 61, 64-65.
 {¶ 19} "By its very terms, the physician-patient privilege attaches to communications only made within the physician-patient relationship-that is, communications made relating to the medical treatment of the patient. If the communication between the physician and patient purports a fraud and/or other criminal activity, the `relationship' is not established and the privilege does not attach. See State v. Garrett
(1983), 8 Ohio App.3d 244; State v. McGriff (1996), 109 Ohio App.3d 668. This is analogous to a situation where the attorney-client privilege cannot be asserted as a cover for wrongdoing." State v. Spencer (1998),126 Ohio App.3d 335, 338-339, referencing Lemley v. Kaiser (1983),6 Ohio St.3d 258.
 {¶ 20} For example, in Spencer, the court held that the physician-patient privilege did not apply when the facts showed that the physician had prescribed "[i]nordinate amounts of prescribed drugs." Id. at 354. In that case, the grand jury issued a subpoena to the physician to produce the medical records of a *Page 8 
certain patient. Both the physician and the patient filed motions to quash the subpoena, objecting to the release of the records on the basis of the physician-patient privilege. The trial court held a hearing and heard testimony from a compliance officer with the Ohio State Board of Pharmacy. The court subsequently overruled the motions to quash the subpoena.
 {¶ 21} On appeal, the court would not permit the physician to raise the privilege when "there is reasonable articulable evidence supporting a suspicion of criminality." Id. at 339. The court further explained:
 "It is accepted that exceptions to privileged communications are primarily statutory. In the case before this court, there is unchallenged evidence supporting a finding of criminal conduct; therefore, public policy mandates that this circumstance vitiate the privilege. Accordingly, this court need not address the issue raised, to wit, statutory exception versus public policy. State v. Smorgala (1990), 50 Ohio St.3d 222, 553 N.E.2d 672. The court has the duty and responsibility to determine at the outset whether the party is in a position to raise "privilege" before having to address the availability of an exception. In this case, the parties are not in a position to raise the shield afforded in ordinary physician-patient circumstances.
 Accordingly, there is sufficient evidence in the record that demonstrates that appellant and Liberman were involved in illegal activity, i.e., prescribing steroids for the purpose of enhancing athletic ability. Therefore, the physician-patient relationship for purposes of the privilege set forth in R.C. 2317.02 does not exist."
Spencer at 339-340.
 {¶ 22} Here, the facts do not show that any of the statutory exceptions apply. The records were subpoenaed as part of a grand jury proceeding. Thus, the action is not civil in nature and none of the civil actions exceptions apply. Furthermore, no evidence exists that this is a criminal action (1) involving tests or test results that determine the presence of alcohol or drugs in a patient's blood or *Page 9 
(2) against Banks. There is a complete lack of evidence that Banks engaged in criminal activity. Thus, the present case stands in contrast to Spencer, where the record contained ample evidence of the doctor's criminal activity.
 {¶ 23} Additionally, although the state asserts that a physician may not assert the privilege to shield himself or herself from criminal liability, see State v. McGriff (1996),109 Ohio App.3d 668, 670, the record here does not contain any facts suggesting that Banks is asserting the privilege to shield herself from criminal liability. Moreover, the state has not even argued that she is attempting to shield herself from criminal liability.
 {¶ 24} Furthermore, we are not inclined to judicially create a public policy exception to the privilege statute for grand jury subpoenas.In re My Sister's Place at ¶ 22; see, also, Jackson v. Greger,110 Ohio St.3d 488, 2006-Ohio-4968, ¶ 13 (stating that the court has "consistently rejected the adoption of judicially created waivers, exceptions, and limitations for testimonial privilege statutes");Schlotterer, supra, at ¶ 27 (noting that the law disfavors judicially created exceptions to the privilege statute). But, see, In re Brink
(1988), 42 Ohio Misc.2d 5, 5-9 (holding that public interest in grand jury proceedings trumped the physician-patient privilege).
 {¶ 25} Therefore, because none of the statutory exceptions apply and because we refuse to judicially create a public policy exception, the physician-patient privilege applies. Consequently, the trial court should have granted Banks' motion to quash the subpoena. *Page 10 
 {¶ 26} Accordingly, we sustain Banks' sole assignment of error and reverse the judgment of the trial court.
[1] We observe that "the regulations protecting the physician-patient privilege in Ohio are more stringent than those put forward in HIPAA."Grove v. Northeast Ohio Nephrology Assoc, 164 Ohio App.3d 829,2005-Ohio-6914, ¶ 23; see, also, Medical Mut. of Ohio v.Schlotterer, Cuyahoga App. No. 89388, 2008-Ohio-49, at ¶ 32, fn. 4.
 JUDGMENT REVERSED. *Page 11