[Cite as *Williams v. Ohio Dept. of Edn.*, 2011-Ohio-6615.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
JACKSON COUNTY

| | | |
|---|---|---|
| MARK A. WILLIAMS, | : | |
| | : | |
| Plaintiff-Appellant, | : | Case No. 10CA17 |
| | : | |
| vs. | : | **Released: December 5, 2011** |
| | : | |
| OHIO DEPARTMENT OF | : | <u>DECISION AND JUDGMENT</u> |
| EDUCATION, et al., | : | <u>ENTRY</u> |
| | : | |
| Defendants-Appellees. | : | |

_____

<u>APPEARANCES:</u>

Bradford D. Zelasko, Jeffries, Kube, Forrest & Monteleone Co., L.P.A., Cleveland, Ohio, for Appellant.

Mike DeWine, [1], Ohio Attorney General, and Amy Nash Golian, Assistant Ohio Attorney General, Columbus, Ohio, for Appellees.

_____

McFarland, J.:

{¶1} This is an appeal from a Jackson County Court of Common Pleas judgment entry affirming an administrative decision and order by Appellee, Ohio Department of Education, permanently revoking Appellant, Mark Williams', professional teaching certificate and principal license, and dismissing his appeal. On appeal, Appellant contends that 1) the trial court's denial of his motion for admission of additional evidence was erroneous and

_____
[1] At the time of the filing of this appeal, Richard Cordray was the Ohio Attorney General.

prejudicial; 2) the trial court erred in determining that the evidence relied upon by the administrative hearing officer was reliable, probative, and substantial; and 3) the trial court's decision is contrary to the manifest weight of the evidence.

{¶2} In light of our determination that the trial court did not err or abuse its discretion in refusing to admit additional evidence on appeal, Appellant's first assignment of error is overruled. Further, as we find that the State's medical and factual evidence was reliable, and that the board and trial court's decisions were supported by reliable, probative and substantial evidence, Appellant's second assignment of error is overruled. Finally, as Appellant raises arguments under his third assignment of error which were not raised at the common pleas court level, he cannot raise them for the first time on appeal. Thus, his third assignment of error is overruled. Accordingly, the decision of the trial court is affirmed.

FACTS

{¶3} This appeal involves Appellee, Ohio State Board of Education's, permanent revocation of Appellant, Mark Williams', five-year professional elementary principal license and permanent elementary teaching certificate. Appellant began his employment as an elementary school teacher with Wellston City School District in 1992. In 2002, he was made Assistant

Principal of Bundy Elementary in the Wellston City School District.  After serving in that position for one year, he took the principal's position, a position in which he remained until his resignation on August 8, 2007.  The record reveals that Appellant resigned his position under threat of termination and/or non-renewal, after an investigation by the Wellston City School Board revealed inappropriate email messages sent from Appellant's school computer, inappropriate materials on his school computer, inappropriate access of websites on his school computer, misuse of school time, and other unacceptable behaviors and interactions with parents, teachers, and supervisors.

{¶4} On August 13, 2007, Superintendent Kaple of the Wellston City School District, through counsel, C. Allen Shaffer with the law firm of Bricker & Eckler, sent a "School District, MRDD & Community School Educator Misconduct Reporting Form" to the Ohio State Board of Education reporting Appellant's resignation and a brief history leading up to the resignation.  Subsequently, Appellant received a Notice Letter dated June 18, 2008, from the Ohio State Board of Education advising him of the board's intention to limit, suspend or revoke his five year professional elementary principal license and his permanent elementary school teaching license and informing him of his right to a hearing.  Appellant then

requested an administrative hearing, which took place over a seven day period, ending on February 9, 2009.

{¶5} An administrative hearing officer presided over the seven day hearing, during which the State presented fifteen witnesses and Appellant presented two witnesses. Numerous exhibits were also introduced. Of importance herein, the State presented testimony by Dr. Marjorie Gallagher, M.D., the psychiatrist who performed a two-part fitness for duty evaluation on Appellant as part of the investigation previously conducted by the Wellston City School Board; Brigitte Sollie, an expert forensic computer analyst obtained by the law firm of Bricker & Eckler as part of the Wellston school board's investigation; Joey Rapp, the Wellston school district information technology professional, as well as several teachers and staff under Appellant's supervision.

{¶6} Dr. Gallagher testified that in her medical opinion, which was to a reasonable degree of medical certainty, Appellant suffered from bipolar disorder, and that the Appellant's behavior raised several red flags. Dr. Gallagher ultimately testified that in her opinion Appellant was not fit for duty. Ms. Sollie, the forensic computer analyst testified that she performed an analysis of Appellant's then current computer, as well an old computer he used prior to obtaining a new computer. A report generated by her during

the Wellston City School Board's investigation was also admitted into evidence, which indicated that Ms. Sollie located pornographic content on Appellant's school issued computers.

{¶7} Mr. Rapp also testified regarding the various computer filtering systems in place within the school district and how internet usage is stored and can be retrieved by user based upon login information and IP address. He explained how he went about retrieving Appellant's email history, old computer information and the hard drive from his current computer in order that it could be analyzed by Ms. Sollie.

{¶8} Several teachers also testified, identifying multiple instances of unprofessional and bizarre conduct by Appellant, in relation to both staff and students. For example, testimony was presented that Appellant would routinely pretend to be picking his nose, accuse others of picking their nose, make flatulence noises, talk about bodily functions and fluids, would act in an effeminate manner using a high pitched voice, would ask staff inappropriate and personal questions, would routinely either encourage or permit one staff member in particular to perform "pole dances" during staff meetings, and also permitted chocolate suckers in the shape of male genitalia to be passed out at a staff meeting.

{¶9} The seven days of administrative hearings resulted in over 2000 pages of transcript. On September 22, 2009, the administrative hearing officer issued a 48 page report and recommendation identifying numerous instances of conduct unbecoming a teacher under R.C. 3319.31(B)(1). As a result, the administrative hearing officer recommended that Appellant's five-year professional elementary principal license and his permanent elementary school teaching certificate be revoked. It was further recommended that Appellant be permanently ineligible to apply for any license issued by the State Board and that he shall no longer be permitted to hold any position in any school district in the state that requires a license issued by the State Board.

{¶10} Subsequently, on November 10, 2009, the Ohio State Board of Education passed a resolution adopting the report and recommendation of the hearing officer. Appellant appealed the decision of the Ohio State Board of Education to the Jackson County Court of Common Pleas, which found that the board's decision was supported by reliable, probative and substantial evidence and thus affirmed the decision. It is from the decision of the Jackson County Court of Common Pleas that Appellant now brings his timely appeal, assigning the following errors for our review.

ASSIGNMENTS OF ERROR

"I.     THE TRIAL COURT'S DENIAL OF PLAINTIFF-APPELLANT'S
        MOTION FOR ADMISSION OF ADDITIONAL EVIDENCE WAS
        ERRONEOUS AND PREJUDICIAL.

II.     THE TRIAL COURT ERRED IN DETERMINING THAT THE
        EVIDENCE RELIED UPON BY THE ADMINISTRATIVE
        HEARING OFFICER WAS RELIABLE, PROBATIVE, AND
        SUBSTANTIAL.

III.    THE TRIAL COURT'S DECISION IS CONTRARY TO THE
        MANIFEST WEIGHT OF THE EVIDENCE."

STANDARD OF REVIEW

**{¶11}** The present case involves an administrative appeal to the

Jackson County Court of Common Pleas pursuant to R.C. 119.12.  The trial

court reviews an administrative appeal in order to determine whether it is

supported by reliable, probative and substantial evidence and is in

accordance with law. Reliable, probative and substantial evidence has been

defined as: (1) "Reliable" evidence is dependable; that is, it can be

confidently trusted. In order to be reliable, there must be a reasonable

probability that the evidence is true; (2) "Probative" evidence is evidence

that tends to prove the issue in question; it must be relevant in determining

the issue; (3) "Substantial" evidence is evidence with some weight; it must

have importance and value." *Contini v. Ohio State Board of Education*,

Licking App. No. 2007CA0136, 2008-Ohio-5710 at ¶ 16; citing, *Our Place,*

*Inc. v. Ohio Liquor Control Comm.* (1992), 63 Ohio St.3d 570, 571, 589 N.E.2d 1303.

{¶12} In determining evidentiary conflicts, the Supreme Court of Ohio, in *University of Cincinnati v. Conrad* (1980), 63 Ohio State 2d 108, 407 N.E.2d 1265, directed courts of common pleas to give deference to the administrative resolution of such conflicts. The Supreme Court noted when the evidence before the court consists of conflicting testimony of approximately equal weight, the common pleas court should defer to the determination of the administrative body, which, acting as the finder of fact, had the opportunity to determine the credibility and weight of the evidence. *Conrad* at 111; see, also *Contini* at ¶ 17.

{¶13} On appeal to this Court, the standard of review is more limited. Unlike the court of common pleas, a court of appeals does not determine the weight of the evidence. *Rossford Exempted Village School Dist. Bd. of Edn. v. State Bd. of Edn.* (1992), 63 Ohio St.3d 705, 707, 590 N.E.2d 1240; see, also, *Contini* at ¶ 18. In reviewing the trial court's determination that Appellee's order was supported by reliable, probative and substantial evidence, this Court's role is limited to determining whether the trial court abused its discretion. *Roy v. Ohio State Med. Bd.* (1992), 80 Ohio App.3d 675, 680, 610 N.E.2d 562. The term "abuse of discretion" connotes more

than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.

{¶14} Additionally, pertinent to the issues herein, R.C. 3319.31, entitled "Refusal, limitation, suspension, or revocation of license" provides in section (B)(1) as follows:

"(B)   For any of the following reasons, the state board of education, in accordance with Chapter 119. and section 3319.311 of the Revised Code, may refuse to issue a license to an applicant; may limit a license it issues to an applicant; may suspend, revoke, or limit a license that has been issued to any person; or may revoke a license that has been issued to any person and has expired:

(1)   Engaging in an immoral act, incompetence, negligence, or conduct that is unbecoming to the applicant's or person's position;"

ASSIGNMENT OF ERROR I

{¶15} In his first assignment of error, Appellant contends that the trial court's denial of his motion for admission of additional evidence was erroneous and prejudicial.   Appellant claims that his ability to seek admission of additional evidence is particularly important as he had no right to prehearing discovery depositions prior to the administrative hearings.  In hearing an administrative appeal, the court of common pleas is confined to the record certified by the agency. R.C. 119.12. R.C. 119.12 further provides that:

"unless otherwise provided by law, the court may grant a request for the admission of additional evidence when satisfied that such additional evidence is newly discovered and could not with reasonable diligence have been ascertained prior to the hearing before the agency. 'Newly discovered evidence refers to evidence that was in existence at the time of the administrative hearing, but which was incapable of discovery by due diligence; however newly discovered evidence does not refer to newly created evidence.' * * * "

{¶16} "In interpreting Civ. R. 60(B)(2), which is analogous to R.C. 119.12 as it pertains to newly discovered evidence, [the Fifth District] has held that the moving party has the burden of demonstrating: '(1) that the evidence was actually "newly discovered"; that is it must have been discovered subsequent to the trial; (2) that the movant exercised due diligence; and (3) that the evidence is material, not merely impeaching or cumulative and that a new trial would probably produce a different result.' " *O'Wesney v. State Bd. of Registration For Professional Engineers and Surveyors*, Stark App. No. 2009-CA-00074, 200 -Ohio-6444 at ¶ 79; citing, *Clark v. State Bd. of Registration for Professional Engineers & Surveyors* (1997), 121 Ohio App.3d 278, 287-288, 699 N.E.2d 968.

{¶17} In the common pleas level appeal, Appellant sought to introduce 1) an affidavit of Jeffrey Smalldon, Ph.D. with attachment including his post-hearing letter to Appellant's counsel at the hearing suggesting medical board inquiry into Dr. Gallaher's objectivity and role in

the proceeding;[2] and 2) counsel's affidavit identifying a letter to Dr.

Gallagher from the law firm representing the Wellston City School District

Board of Education.  Appellee contends that neither of the documents

Appellant sought to introduce, which were affidavits, were newly

discovered, but rather were newly created.  We agree.

{¶18} However, we will nonetheless address the trial court's refusal to

admit the underlying document referenced by counsel's affidavit related to

the information provided to Dr. Gallagher.  Appellant challenges the trial

court's refusal to admit a letter, which he claims was discovered after the

administrative hearing, that was provided to Dr. Gallagher by the law firm of

Bricker and Eckler, arguing that the trial court did not employ the proper

analysis when making its decision.  Although the trial court's entry did not

include language indicating whether the proposed additional evidence was

newly discovered or not, the entry stated as follows:

"That hearing resulted in 2,069 pages of transcript and a voluminous amount
of exhibits.  The Plaintiff-Appellant was represented throughout the hearing
by counsel.  Many witnesses were called on behalf of the Ohio Department
of Education.  Approximately 21 witnesses were identified and subpoenaed
by the Plaintiff-Appellant, many of which appeared for the hearing.  Out of
the 21 witnesses only two (2) were called to testify.  This hearing before the
Ohio Department of Education may not have been the longest hearing had
before said board, but it was certainly one of the longest.  This appeal is
brought under Section 119.12 of the Ohio Revised Code.  This Court may

---

[2] Appellant does not address how this affidavit constituted newly discovered evidence or how its admission
would have produced a different result; thus, we do not address it on appeal.

affirm the findings of the state administration agency if this Court finds that the order is supported by reliable, probative and substantial evidence and is in accordance with law. This Court may allow additional evidence to be admitted, but it is not required to do so. The Plaintiff-Appellant had ample opportunity to present any information which he had in the hearing before the state board. The Plaintiff-Appellant decided to chose [sic] not to call certain witnesses that had been identified and subpoenaed. The trial/hearing strategy to call or not call witnesses and/or to introduce or not to introduce matters is something that rests with the party."

{¶19} Further, a review of the record reveals that Appellee is correct in that the letter to Dr. Gallagher was discussed during the administrative hearing and that Appellant's counsel conceded at the hearing that he had not issued the proper subpoenas. As such, this evidence was not discovered subsequent to trial and does not constitute newly discovered evidence. Thus, we cannot conclude that the trial court erred or abused its discretion in denying admission of Appellant's proposed additional evidence. Accordingly, Appellant's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

{¶20} In his second assignment of error, Appellant contends that the trial court erred in determining that the evidence relied upon by the administrative hearing officer was reliable, probative and substantial. As set forth above, in reviewing the trial court's determination that Appellee's order was supported by reliable, probative and substantial evidence, this Court's role is limited to determining whether the trial court abused its discretion.

*Roy v. Ohio State Med. Bd.* at 680. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore* at 219.

{¶21} While Appellant acknowledges that the State presented numerous witnesses and a "multitude of exhibits," Appellant claims that the State's medical evidence and factual evidence was unreliable.  As to the medical evidence, Appellant claims that Dr. Marjorie Gallagher's testimony was unreliable because the evidentiary material she reviewed prior to her evaluation of Appellant was provided by Bricker and Eckler, a law firm hired by the Wellston City Board of Education.[3]

{¶22} A review of the record reveals that under the direction of Superintendent Mr. Kaple, the school information technology employee, Mr. Rapp, secured copies of Appellant's emails from his school computer, Appellant's old computer, as well the hard drive from the computer Appellant was using in his office.  This information was provided to the law firm of Bricker and Eckler, which had been hired by the Wellston school board.  Bricker and Eckler in turn obtained the services of computer forensic analyst, Brigitte Sollie, to perform an analysis of Appellant's computer usage.  Ms. Sollie performed an analysis and provided a computer

---

[3] This provision of information by Bricker and Eckler forms the basis of Appellant's first assignment of error, wherein Appellant sought introduction of a letter from Bricker and Eckler that was provided to Dr. Gallagher.

investigative report dated April 6 to May 8, 2007.  Specifically, her report indicated that she analyzed Appellant's old computer and also the hard drive from his then current computer, which had been delivered to Bricker and Eckler and given to her for imaging.  The report indicated that she analyzed and reviewed the files, carved files out of the unallocated space to recover any items that had been deleted, extracted files, and found a pornographic movie.  The report further indicated that Ms. Sollie burned the files to a CD and six DVD's, which she provided to "Shaffer" at Bricker and Eckler for review.  Ms. Sollie also testified during the administrative hearing regarding her analysis and findings.

{¶23} The record also reveals that Appellant underwent a fitness for duty evaluation, conducted by Marjorie C. Gallagher, M.D., a board certified psychiatrist.  Appellant's evaluation was conducted in two parts, the first part taking place on March 8, 2007, prior to the computer evaluation, and the second part taking place June 13, 2007, after the computer evaluation.  As indicated by Dr. Gallagher, the second part of Appellant's fitness for duty evaluation was conducted after additional information had been provided to her, which "included the results of a computer forensic analysis performed by an independent computer expert and directed, managed, and analyzed by C. Allen Shaffer, an attorney with Bricker and Eckler, LLP, on three of the

school computers used by Mr. Williams over the previous year and a half."[4]

Thus, it appears from the record that Dr. Gallagher was clear about where the information she was reviewing came from, and that an attorney with Bricker and Eckler directed the investigation, with the assistance of a forensic computer analyst. We cannot conclude, based upon the record, that Dr. Gallagher was under any misconception regarding the reliability of the information she utilized during her evaluation of Appellant.

{¶24} Further, the summary paragraph of Dr. Gallagher's psychiatric evaluation of Appellant's states as follows:

"Mainly because of, but not limited to, the evidence found on Mr. Williams's computers; because of Mr. Williams' symptoms of Bipolar Disorder, NOS, and Personality Disorder, NOS; and because of Mr. Williams' sexually inappropriate behavior, it is my opinion with a reasonable degree of medical certainty that Mr. Williams is not fit for duty to work as an elementary school principal or as a teacher. Psychiatric treatment with psychotherapy and medication management is recommended."

Dr. Gallagher further testified at trial, explaining that even after the first part of the evaluation, prior to being provided with information related to Appellant's computer usage, she had already determined that Appellant was not fit for duty without treatment.

---

[4] Appellant places much emphasis on the fact the C. Allen Shaffer, an attorney with Bricker and Eckler, was involved in the analysis of Appellant's computer, arguing that his involvement resulted in an unreliable analysis. In fact, it was Shaffer who drafted the letter to Dr. Gallagher, the admission of which was denied by the common pleas court, and which is the subject of Appellant's first assignment of error. As such, the actual letter, though its existence is referenced in Dr. Gallagher's report and was the subject of testimony during the administrative hearing, is not part of the record on appeal.

{¶25} Although a Bricker and Eckler attorney was involved in the analysis of Appellant's computers and allegedly wrote a letter to Dr. Gallagher providing her with information related to that analysis, there is no indication that Dr. Gallagher's evaluation was affected by this fact. Further, it is clear from the record that Appellant's computers were, in fact, analyzed by Brigitte Sollie, a computer forensic analyst, who issued an investigative report advising that pornography had been found on Appellant's computer. Finally, as set forth above, Dr. Gallagher testified during the administrative hearing that she determined Appellant was not fit for duty even before she was provided with the computer analysis information, as Appellant refused to obtain treatment for what, in her opinion, was bipolar disorder.

{¶26} Appellant also challenges certain information accepted by Dr. Gallagher to be true, specifically that Appellant's internet surfing included visits to sites in foreign countries where a virtual child could be created. Appellant argues that the State failed to present any evidence that Appellant actually visited these sites or that visiting such sites is linked with sexual attraction to children. However, the transcript from the administrative hearing reveals that when questioned about these internet sites in particular, Dr. Gallagher stated that she did not base her decision or diagnosis on this

information.  For example, the following testimony appears as follows in the

transcript:

"Q.    Disregarding that information about surfing the Eastern Bloc Internet
       sites regarding virtual children, if you did not have that information in
       front of you, would your opinion have changed as to what you had
       under Axis I, possible pedophilia, non-exclusive type?

A.     No.

Q.     And why is that?

A.     Because the other information I had of the children sitting on his lap
       and his giving them candy and the 800 pictures on his computer and
       the nude photograph of the child all would have been red flags.[5]

Q.     You have mentioned a couple times, and I believe you set forth in
       your report about the candy, and I'm looking also at 8-7A, fourth
       paragraph, the Bundy Lottery.  Why is that significant?  Why is the
       candy significant?

A.     Because again, pedophiles try to make special relationships with
       children, and one way they do is to give them prizes or gifts to
       establish a closer relationship of that child or to make the child feel
       special, tell the child they're special.  It's a way of increasing or
       making more intimate a relationship.

Q.     Did you at any time discuss with Mr. Williams the number of prizes
       or the number of times this Bundy Lottery ran or anything of that?

A.     Not any more than what's already in the report.  They would have a
       lucky day every month.  He explained when a child did something

---

[5] The record indicates that Appellant had previously been reported to Children's Services for having a child sit on his lap in his office; however,  Appellant testified that this was report was unfounded.  The record further identifies that Appellant would keep candy in office which he would give to the students.  The reference to 800 pictures and the nude photograph of the child relate to the information recovered from Appellant's computers.  Apparently Appellant's computer had over 800 photographs of students, mainly from different activities, and also prize winners from the "Bundy Lottery."  Further, a nude photograph of a child was found on Appellant's computer, which Appellant claims was sent to him as an email attachment. The hearing transcript indicates that Appellant had knowledge that this photo was on his computer.

good, they would go to the office and get a toy out of the prize box that in the office.

Q.    Did this frequency come into play with you as far as the frequency of gift giving, or did anything like that have anything to do with making any type of significance for your opinion?

A.    Well, I think, first of all, it's unusual for principals to be giving gifts to children, but the fact this was at least once a month and even more frequent with all the pictures, I think that's not normal."

Thus, Dr. Gallagher testified that even omitting the information related to surfing foreign country websites, based on other information, her diagnostic impression still would have been possible pedophilia.

{¶27} Further, as noted by the hearing officer in her September 22, 2009, report and recommendation:

"The testimony was clear that Dr. Gallagher's evaluation and subsequent report was retained at the request of the Wellston City School District. This request for an evaluation by Dr. Gallagher was separate and apart from the action initiated by the Department [of Education]. The case against Mr. Williams concerns the numerous allegations set forth in the Notice Letter, of which Dr. Gallagher's finding that Mr. Williams is unfit for duty as an educator, is only one allegation."

Based on the foregoing, we cannot conclude that the trial court abused its discretion in affirming the decision of the Board of Education to permanently revoke Appellant's teaching and principal's license. Therefore, we reject the first argument raised under Appellant's second assignment of error.

{¶28} Appellant next argues under this assignment of error that the State's factual evidence was unreliable. Although Appellant concedes that the evidentiary rules are relaxed in the context of administrative hearings, Appellant contends that the hearing officer "admitted and considered evidence constituting hearsay on multiple levels and allowed the medical testimony based upon that hearsay." Other than referencing Dr. Gallagher's reliance on a letter allegedly sent to her from Bricker and Eckler regarding the computer analysis, which is not in the record before us, as well as Dr. Gallagher's reliance on several anonymous statements regarding Appellant's workplace behavior, Appellant does not specifically set forth the other instances of hearsay to which he alleges. Instead, Appellant simply cites us to his brief filed with the court of common pleas.

{¶29} As to the Bricker and Eckler letter, we have already noted that that letter was not admitted during the administrative hearing process, was properly excluded during the appeal to the common pleas court, and, as such, is not properly before us for consideration. As to the anonymous statements referenced by Dr. Gallagher during her psychiatric evaluation of Appellant, the hearing officer stated as follows in her recommendation and report:

"* * * Mr. Williams' counsel correctly states that there was no evidence presented on some of the issues raised in Dr. Gallagher's report. This

administrative hearing action is based upon the evidence presented at the numerous days of hearings in this case; it is not based upon a report. It is noted that evidence was present at the administrative hearing on many of the 'anonymous' complaints referenced in the report; therefore, for the purposes of the case before the Board, these complaints are not anonymous."

Thus, although Dr. Gallagher did utilize several anonymous statements provided by teachers and staff in conducting Appellant's evaluation, the hearing officer made it clear that her decision was based on the testimony actually presented at the administrative hearings, not on Dr. Gallagher's report. Further, several teachers and staff testified during the hearings to Appellant's unprofessional, and quite frankly, bizarre workplace behavior, directed not only toward staff, but also students. As it appears that the hearing officer relied on the testimony presented, rather than the anonymous statements, we find no error or abuse of discretion.

{¶30} Finally, though not properly briefed for this Court, Appellant references arguments set forth in his trial court brief challenging evidence related to the following: 1) "joke" emails; 2) staff meetings and activities; 3) interaction with students; and 4) miscellaneous teacher testimony. Specifically, in his trial court brief, Appellant set forth arguments with respect to the following areas of evidence: 1) "joke" emails: "while some may not find them funny or entertaining, any suggestion that they are badges of pedophilia lacks merit[;]" 2) staff meetings and activities: "[t]hese

episodes may well evidence deficiencies in management skills, but it is submitted that such sporadic occurrences should not be career-ending events[;]" 3) interaction with students: "[t]he totality of the evidence reveals that Mark Williams' humor may be better appreciated by 1st and 2nd graders than many teachers[;]" and 4) miscellaneous teacher testimony: "it is submitted that much of the evidence of teacher commentary and complaint regarding Mark Williams does not carry weight and significance that calls for the permanent revocation of his teaching credentials . . . unless, of course, the evidence is viewed as pertaining to a potential pedophile."

{¶31} On appeal, Appellant seems to argue that the foregoing evidence was inadmissible hearsay, relying on the arguments made in his trial brief. However, a review of Appellant's trial brief indicates that no hearsay objections were raised, but rather Appellant challenged the weight afforded to the evidence by the hearing officer and the Board of Education. As set forth above, unlike the court of common pleas, a court of appeals does not determine the weight of the evidence. *Rossford Exempted Village School Dist. Bd. of Edn. v. State Bd. of Edn.* at 707; see, also, *Contini* at ¶ 18. Here, it was within the province of the hearing officer and the board to determine, as the trier of fact, the weight to be afforded this particular evidence. And, from our perspective, the trial court did not abuse its

discretion in affirming the board's decision to revoke Appellant's teaching and principal license, which was supported by reliable, probative and substantial evidence.

{¶32} Accordingly, we reject the second argument raised under Appellant's second assignment of error and accordingly overrule Appellant's second assignment of error in total.

ASSIGNMENT OF ERROR III

{¶33} In his third assignment of error, Appellant contends that the trial court's decision is contrary to the manifest weight of the evidence and thus was essentially contrary to law. However, as we have previously stated, unlike the court of common pleas, a court of appeals does not determine the weight of the evidence. Id.; see, also, *Contini* at ¶ 18. In reviewing the trial court's determination that Appellee's order was supported by reliable, probative and substantial evidence, this Court's role is limited to determining whether the trial court abused its discretion. *Roy v. Ohio State Med. Bd.* at 680.

{¶34} However, as noted by Appellant, although an appellate court must afford deference to the administrative resolution of evidentiary conflicts, the determination of whether an agency's order is in accordance with the law is unlimited. *Bivins v. Ohio State Bd. of Emergency Med.*

*Servs.*, 165 Ohio App.3d 390, 395, 2005-Ohio-5999, 846 N.E.2d 881.  As a result, Appellant asks this Court to consider whether the trial court's decision was contrary to law, based upon the contention that the issue of whether Appellant saved or downloaded allegedly improper data, or even knew of the data's presence on the hard drive was irrelevant to the hearing officer.  Appellant also contends that the hearing officer failed to distinguish between Appellant's fitness for duty as a teacher versus as an administrator.

{¶35} A review of the record reveals that Appellant did not raise these arguments at the trial court level.  "It is a cardinal rule of appellate procedure that a party cannot assert new legal theories for the first time on appeal."  *In re Banks*, Scioto App. No. 07CA3192, 2008-Ohio-2339, at ¶ 10.  As such, Appellant has waived these arguments on appeal and we will not address them.  Thus, Appellant's third and final assignment of error is overruled.

{¶36} In light of our determination under Appellant's second assignment of error that the trial court's decision was supported by reliable, probative and substantial evidence, we cannot conclude that the trial court's erred or abused its discretion in reaching its decision.  Accordingly, the decision of the trial court is affirmed.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and that the Appellees recover of Appellant costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Jackson County Common Pleas Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.

Harsha, P.J. and Kline, J.: Concur in Judgment and Opinion

For the Court,


BY:    _____
          Matthew W. McFarland, Judge



**NOTICE TO COUNSEL**


**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**